# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CASE NO. 5:24-CV-251-KDB-DCK

| | | |
|---|---|---|
| **DEREK SLAUGHTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **v.** | ) | |
| | ) | |
| **THE CITY OF NEWTON, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion To Dismiss Plaintiff's Complaint" (Document No. 11).  This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition.  Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that the motion be <u>granted in part</u> and <u>denied in part</u>.

Specifically, the undersigned recommends that the motion be granted with respect to Plaintiff's claims against the Newton Police Department and Plaintiff's claims against Defendants Brown, Sipe, Beal, Hayes, Kelly, and Franklin in their official capacities.  The undersigned recommends that the motion be denied with respect to:  Plaintiff's claims against the City of Newton for negligent retention and supervision, violation of his First Amendment rights pursuant to 42 U.S.C. § 1983, violation of public policy based on N.C. GEN. STAT. §§ 14-223 and 160A-169, and civil conspiracy;  and Plaintiff's claims against Defendants Brown, Sipe, Beal, Hayes, Kelly, and Franklin in their individual capacities for violation of his First Amendment rights pursuant to 42 U.S.C. § 1983, violation of public policy based on N.C. GEN. STAT. §§ 14-223 and 160A-169, and civil conspiracy.

# I. BACKGROUND

Plaintiff Derek Slaughter ("Plaintiff" or "Slaughter") filed his "Complaint" (Document No. 1) against Defendants the City of Newton, the Newton Police Department (the "Newton PD"), Donald Brown ("Brown"), Vidal Sipe ("Sipe"), Mark Beal ("Beal"), Timothy Hayes ("Hayes"), Brian Kelly ("Kelly"), and Jonathan Franklin ("Franklin") on November 22, 2024.

Defendants Brown, Sipe, Beal, Hayes, and Kelly (collectively, the "Officer Defendants") were, at the times relevant, employees of the Newton Police Department. (Document No. 1, pp. 3–4). Defendant Franklin was, at the times relevant, employed by the City of Newton as a City Manager. Defendant Franklin and the Officer Defendants are sued in their individual and official capacities. Id. at pp. 3–5.

The Complaint alleges (1) violation of Plaintiff's First Amendment rights pursuant to 42 U.S.C. § 1983; (2) retaliation pursuant to N.C. GEN. STAT. § 14-223[1]; (3) retaliation pursuant to N.C. GEN. STAT. § 160A-169; (4) civil conspiracy; (5) negligent retention and supervision; and (6)[2] municipal Monell liability under 42 U.S.C. § 1983. (Document No. 1, pp. 15–26). Plaintiff's Complaint appears to assert the first four claims against all Defendants, the fifth claim of negligent retention and supervision claim against only the City of Newton and the Newton Police Department, and the sixth claim against only Defendant City of Newton. The sixth claim asserting Monell liability appears to again assert violations of Plaintiff's First Amendment rights pursuant to § 1983. Id.

---

[1] Plaintiff's Complaint cites to N.C. GEN. STAT. § 12-223, which does not appear to exist. (Document No. 1, pp. 1, 16–17). Subsequent briefing indicates that this was a typographical error and Plaintiff's intended citation was to N.C. GEN. STAT. § 14-223. (Document No. 15, pp. 9–11).
[2] Plaintiff's Complaint refers to his Monell claim as the "Seventh Cause of Action," but he does not first name a "Sixth Cause of Action." (Document No. 1, pp. 23–24).

2

The Complaint alleges that Plaintiff "worked for Defendant Newton Police Department as a law enforcement officer." (Document No. 1, p. 7). Plaintiff "was a direct employee of Defendant Newton Police Department from September 22, 2007, until November 11, 2013," at which time he left his position with the Newton PD "to work for the Lincoln County Sheriff's Department." Id. "On June 1, 2016, Plaintiff returned to employment with Defendant Newton Police Department," and he remained a direct employee of the Newton PD from June 1, 2016, until October 12, 2022. Id. Plaintiff alleges that "[a]t the time of his rehire, [he] was required to repeat field training without cause or reason," and "Defendant Brown directed Sergeant David Coffman, Plaintiff's direct supervisor, to monitor Plaintiff's work for misconduct without cause or provocation." Id. at p. 8.

The Complaint alleges that in or around 2016, "Defendant Brown announced his candidacy for Sheriff of Catawba County." Id. Around the same time, "Mr. Jason Reid, the supervisor of the Narcotics Division of the Catawba County Sheriff's Office, announced his candidacy for Sheriff of Catawba County." Id. Plaintiff alleges that in or around 2016, "Defendant Brown directed Plaintiff to obstruct the duties of the Narcotics Division of the Catawba County Sheriff's Office in their duties," such as by "not assisting the Catawba County Sheriff's Office in their duties, lying to the Catawba County Sheriff's Office about a drug complaint, and preventing the Catawba County Sheriff's Office from claiming jurisdiction in cases." Id. at pp. 8–9. Plaintiff alleges "these unlawful instructions were issued as a result of political motivations." Id. at p. 9.

The Complaint indicates Plaintiff did not comply with the alleged unlawful instructions, around which time "Defendant Hayes made reports with false allegations against Plaintiff." Id. The Complaint alleges that "[o]n or about October 24, 2016, Plaintiff was removed from night shift and stripped of Homeland Security credentials without cause." Id. Plaintiff alleges he

"consulted with Prosecutor Kyle Smith to ensure he was complying with public policy and confirm that his discipline was without cause."  Id.

The Complaint alleges that "[o]n or about November 27, 2017, Defendant Beal and Defendant Hayes directed Plaintiff to interrogate a suspect with the purpose of gathering damaging information about Mr. Jason Reid."  Id.  Plaintiff alleges "these unlawful instructions were issued as a result of political motivations," and "Plaintiff refused to participate in the interrogation."  Id. Plaintiff alleges that around October 2018, Defendant Kelly directed Plaintiff to refrain from taking action in an investigation in order "to allow Defendant Brown to claim the drug bust as his inaugural major arrest upon assuming office."  Id. at pp. 9–10.  Plaintiff alleges that "[o]n or about November 21, 2018, Plaintiff was again removed from the night shift and the narcotics division without cause."  Id. at p. 10.

In or around 2018, "Defendant Brown won the election for Sheriff of Catawba County." Id. at p. 10.  Defendant Hayes was named interim chief around that time, and in or around 2019, Defendant Sipe became Chief of the City of Newton Police Department.  Id.

Plaintiff alleges that in or around 2019, he requested his personnel file from Defendant Beal and discovered that there was no documentation pertaining to the investigations leading to "the discipline Plaintiff experienced on October 24, 2016, and November 21, 2018, except a document regarding upholding Plaintiff's punishment."  Id.  Around that time, Plaintiff approached Defendant Sipe and requested that he look into both incidents of discipline.  Id.  "It was later discovered that there was unsigned and unapproved write up documentation related to the incidents in Plaintiff's human resource file."  Id. at pp. 10–11.

Plaintiff alleges that as a result of these disciplinary incidents, he "experienced frequently invidious comments and ridicule from fellow officers, rising to a level of workplace harassment."

4

Id. at p. 11. Plaintiff alleges he "made several reports to Defendant Beal" regarding this harassment, but Defendant Beal did not address the issue. Id. In or around 2019, "Plaintiff addressed the harassment with Defendant Sipe during a departmental meeting." Id. Plaintiff alleges that at this meeting, Defendant Beal "acknowledged that Plaintiff's discipline was without cause or provocation" and "stated that such action was a result of Defendant Brown's political campaign." Id.

Around that time, Plaintiff filed a complaint with Defendant Sipe against Defendants Brown, Hayes, and Beal "for unlawful discipline as a result of political motivation." Id. Also around that time, "Plaintiff experienced several Internal Affairs investigations without cause, all of which were found to be unfounded of any wrongdoing." Id. Plaintiff alleges "no documentation regarding these investigations was ever placed in Plaintiff's personnel file." Id. Plaintiff alleges he continued to experience harassment in the workplace. Id. at pp. 11–12.

On September 28, 2021, "Plaintiff filed a Declaration of Intent to become a candidate for Sheriff." (Document No. 1, p. 12). The Complaint alleges that around that time, "Defendant Sipe contacted an Internal Affairs investigator with the intent to uncover disparaging information about Plaintiff." Id. "Plaintiff had an in-office meeting with Defendant Sipe about Plaintiff staying back and forth at two locations," and "Plaintiff requested approval of both locations to park [his] police vehicle." Id. The Complaint alleges that "[o]n February 23, 2022, Defendant Brown reported residency concerns to Defendant Sipe" as a result of political motivation. Id. In or around April 2022, "Plaintiff experienced another Internal Affairs investigation without cause due to a complaint made by Defendant Beal" alleging that "Plaintiff was parking his police-issued vehicle at an unauthorized location while off duty." Id.

5

On or around August 5, 2022, "Plaintiff filed a notice of candidacy for Sheriff." Id. at p. 13. On August 11, 2022, "Plaintiff was demoted, received a five-day suspension, and lost his take home police vehicle privileges for six months as a result of Defendant [Beal's] pretextual complaint." Id. The Complaint alleges that on August 12, 2022, "an officer with the Catawba County Sheriff's Department initiated a challenge to [Plaintiff's] political candidacy, citing residency concerns in violation of N.C.G.S. § 163-57(1)." Id. On August 17, 2022, "Plaintiff was compelled to abandon his pursuit of political office due to the persistent reports and interference by Defendant Brown." Id. Plaintiff alleges that "[a]fter investigation, the North Carolina State Board of Elections found…insufficient evidence of any wrongdoing by Plaintiff." Id.

The Complaint alleges that "[o]n September 14, 2022, Plaintiff filed a formal appeal to Defendant City for the unlawful discipline that occurred on August 11, 2022," and "[o]n October 12, 2022, Defendant Franklin terminated Plaintiff from employment for parking his police-issued vehicle at an unauthorized location while off duty." Id. Plaintiff alleges his termination "was pretextual and a result of political motivation." Id. Plaintiff alleges "Defendants repeatedly falsified information relating to the facts and circumstances surrounding Plaintiff's discipline and eventual termination." Id. Plaintiff alleges he suffered violations of his civil and political rights, "lost income, emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety, loss of liberty and harm to reputation." Id. at pp. 13–14.

"Defendants' Motion To Dismiss Plaintiff's Complaint" (Document No. 11) and "…Memorandum In Support…" (Document No. 12) were filed on February 11, 2025. "Plaintiff's Response And Memorandum In Opposition Of Defendants Motion To Dismiss" (Document No.

6

15) was filed on February 25, 2025. "Defendants' Reply To Plaintiff's Response In Opposition To Defendants' Motion To Dismiss" (Document No. 18) was filed on March 12, 2025.

The pending motion has been fully briefed and is ripe for review and a recommended disposition to the Honorable Kenneth D. Bell.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

7

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

Defendants move to dismiss each of Plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(6). The undersigned will consider each of Defendants' arguments in turn.

#### A. Claims Against Defendant Newton Police Department and Officer Defendants in their Official Capacities

Defendants first contend: "Newton Police is not an independent legal entity with the capacity to sue or be sued. As such, the Court should dismiss all claims against Newton Police." (Document No. 11, p. 1). Defendants assert that "[u]nder North Carolina law, a police department is not an independent legal entity with the capacity to sue and be sued." (Document No. 12, p. 6) (quoting Baker v. Durham Cnty. S.W.A.T. Team, 2016 WL 2621972, at *4 (M.D.N.C. May 5, 2016)).

Defendants further contend "this Court has recognized that official capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent," and "[i]t is redundant for a plaintiff to file a lawsuit against a government entity and against those individuals working in their official capacities for that government entity." Id. at p. 7 (quoting Talley v. City of Charlotte, 3:14-CV-683-MOC-DCK, 2016 WL 8679235, at *13 (W.D.N.C. July 22, 2016)). Accordingly, Defendants argue, "the Court should dismiss all official capacity claims against Brown, Sipe, Beal, Hayes, Kelly, and Franklin as those claims are better suited for the City that employs them." Id.

8

Plaintiff argues that, with respect to the dismissal of the Newton Police Department, the instant case is distinguishable from those Defendants cite. (Document No. 15, p. 2). Plaintiff also responds that his "claims against the individual officers…address the officers' individual misconduct that directly contributed to Plaintiff's injuries, which are not fully encompassed by the Monell claim against the City based on its policies and customs." Id. at p. 3.

Defendants reply: "North Carolina case law is clear. Absent a statute authorizing suit against the law enforcement department, a law enforcement department cannot be sued." (Document No. 18, p. 1) (collecting cases). Defendants assert "North Carolina does not have such a statute despite Plaintiff's arguments to the contrary." Id. at p. 2. Defendants further reply that "[i]t is well-established in the Fourth Circuit that Section 1983 claims against a municipal employee in his official capacity[] are just claims against the municipal office the employee holds, rather than the particular individual." Id. at pp. 2–3 (collecting cases).

The undersigned first agrees with Defendants that "[u]nder North Carolina law, police departments cannot be sued as entities." Smith v. Munday, 848 F.3d 248, 256 (4th Cir. 2017). As such, the undersigned respectfully recommends that all claims against the Newton Police Department be dismissed.

The undersigned next agrees with Defendants that "in a suit where the plaintiff asserts a claim against a government entity, a suit against those individuals working in their official capacity for this government entity is redundant." Talley v. City of Charlotte, 3:14-CV-683-MOC-DCK, 2016 WL 8679235, at *13 (W.D.N.C. July 22, 2016) (citing Moore v. City of Creedmoor, 345 N.C. 356, 367 (1997)). "The Fourth Circuit has likewise held that such 'official capacity claims' are essentially the same as a claim against the principal-entity and should be dismissed as

duplicative when the entity is also named as a defendant." Id. (citing Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004)).

Here, Plaintiff appears to have brought each claim against the individual Officer Defendants and Defendant Franklin in their official capacities against the City of Newton as well. Accordingly, the undersigned respectfully recommends that all claims against the Officer Defendants and Defendant Franklin in their official capacities be dismissed as duplicative.

## B. Claims Against Officer Defendants and Defendant Franklin in their Individual Capacities

Defendants next argue that Section 1983 lawsuits "against officials in their individual capacities require assertions that the official in question was personally involved in the deprivation of a plaintiff's rights," and here, "Plaintiff does not allege any facts that allow an inference that Brown, Sipe, Beal, Hayes, Kelly, and/or Franklin acted personally in the alleged deprivation of his rights." (Document No. 12, p. 8). Defendants contend that in fact, "Plaintiff specifically alleges that Brown, Sipe, Beal, Hayes, Kelly, and Franklin acted under color of state law, were agents, servants, employee and officers of the City, and 'performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties.'" Id. (quoting Document No. 1, p. 5).

Defendants contend "Plaintiffs' Complaint alleges that the City was responsible for enforcing the policies and procedures of Newton Police," and "Plaintiff does not claim that Brown, Sipe, Beal, Hayes, Kelly, or Franklin failed to follow or properly apply the City's policies, nor does he claim they had final policymaking authority." Id. (citing Document No. 1, p. 5). Defendants argue that "[w]hen the discretionary decisions of a municipal official are constrained by policies he or she did not make, those policies are *[attributable to] the municipality*, not the [subordinate]." Id. at p. 9 (emphasis in original). Accordingly, Defendants argue, "Plaintiff has

10

failed to state individual capacity claims against Brown, Sipe, Beal, Hayes, Kelly, or Franklin." Id.

Plaintiff responds that "the individual Defendant Officers should not be dismissed from the lawsuit in their individual capacities, as the allegations clearly show their personal involvement in the deprivation of Plaintiff's rights." (Document No. 15, p. 4). Plaintiff contends he has specifically alleged that the individual Defendant Officers, "motivated by political factors, unlawfully disciplined and fired him without cause," and that "[t]hese actions, taken outside the scope of their legitimate duties, are sufficient to establish individual liability under Section 1983, as they directly implicate the personal involvement of the officers in the constitutional violations that occurred." Id. at pp. 4-5.

Plaintiff asserts that he "clearly alleges that the officers engaged in arbitrary and unlawful actions, including disciplining Plaintiff 'without cause'…and giving 'unlawful instructions,'" and "[t]hese allegations demonstrate that the officers' actions were not simply mistakes or failures to follow policy, but rather unlawful conduct that directly violated Plaintiff's rights, making them personally responsible." Id. at p. 5.

Plaintiff further contends that Defendants' "reliance on Section 1983 overlooks the fact that Plaintiff's lawsuit includes several other claims, such as retaliation under state law, civil conspiracy, and negligent retention and supervision." Id. Plaintiff contends "[t]hese claims, particularly the state law claims, focus on the individual officers' personal actions and are not reliant on the Monell framework, which concerns municipal liability." Id.

Defendants reply that "Plaintiff's claims are each alleged generally against Defendants," and "Plaintiff does not allege personal involvement by each of the Defendants in each of his claims." (Document No. 18, p. 3).

The undersigned finds that the Complaint directly alleges misconduct by Defendants Brown, Hayes, Beal, Kelly, Sipe, and Franklin and raises a reasonable inference of personal involvement at this stage. Accordingly, the undersigned will respectfully recommend that those claims not otherwise recommended for dismissal herein be permitted to proceed against these Defendants in their individual capacities—specifically, Plaintiff's claims for violation of his First Amendment rights pursuant to § 1983, retaliation based on N.C. GEN. STAT. §§ 14-223 and 160A-169, and civil conspiracy.

### C. Statutes of Limitations

Defendants next argue that "[u]nder North Carolina law, Section 1983 claims assume a three-year statute of limitations," and "accrual of the three-year statute of limitations is a matter of federal [] law." (Document No. 12, p. 9). Defendants contend that "[u]nder Federal Law, a § 1983 claim accrues when the plaintiff 'possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action.'" Id. at pp. 9–10 (quoting Lee v. City of Fayetteville, 2016 WL 1266597, at *7 (E.D.N.C. Mar. 30, 2016)).

Defendants further contend that "[a]ll claims brought by Plaintiff…are governed by a three-year statute of limitations." Id. at p. 10. Defendants assert "Plaintiff filed his lawsuit on November 22, 2024," and "[a]s such, any claims which rely on conduct occurring prior to November 22, 2021, are time barred." Id.

Plaintiff responds that "his claims against all Defendants are not time-barred, as the statute of limitations is tolled by the continuing violation doctrine." (Document No. 15, p. 6). Plaintiff contends "[t]he continuing violation doctrine applies here, as Plaintiff's termination is the culmination of a series of unlawful acts by Defendants that occurred within the statute of

limitations, but were preceded by ongoing violations, including unlawful discipline and retaliation, that together form a continuous course of conduct." Id. at pp. 6–7.

Plaintiff asserts that Defendants' alleged actions "are interconnected and form part of the same retaliatory scheme, all of which Plaintiff contends were designed to penalize him for his political activity and refusal to comply with unlawful instructions." Id. at p. 7. Plaintiff further asserts that "[t]he final act of termination, which occurred within the statute of limitations, serves as the culmination of these ongoing retaliatory actions, and thus the claims related to these actions are timely." Id.

Defendants reply that "[i]n general, to establish a continuing violation, a plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice." (Document No. 18, p. 4) (quoting Nat'l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1166 (4th Cir. 1991). Defendants argue "[t]he continuing violation theory does not apply to discrete acts of allegedly discriminatory discipline," and "[h]ere, Plaintiff relies on discrete acts to support his claims." Id. (collecting cases).

The undersigned first observes that Plaintiff does not appear to dispute Defendants' assertion that all claims brought by Plaintiff are governed by a three-year statute of limitations. "To establish a continuing violation, the plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice and the same alleged violation must have been committed at the time of each act." Iredell Water Corp. v. City of Statesville, 5:21-CV-132-KDB-DSC, 2022 WL 4543211, at *5 (W.D.N.C. Sept. 28, 2022) (cleaned-up) (quoting National Advert. Co. v. Raleigh, 947 F.2d 1158, 1166–67 (4th Cir. 1991)).

Plaintiff persuasively argues that he has alleged a continuing practice of discriminatory and retaliatory conduct culminating in his termination on October 12, 2022. (Document No. 1, p. 13).

13

At this stage of the litigation, the undersigned is persuaded that the continuing violation doctrine may apply such that Plaintiff's remaining claims are not time-barred. Moreover, Defendants do not dispute that Plaintiff's termination occurred within the statutory period, and the Complaint raises a reasonable inference that Plaintiff's termination was a component of the alleged misconduct.

### D. First Amendment Claim Under § 1983

Defendants argue that Plaintiff has failed to state a First Amendment claim under § 1983. (Document No. 12, p. 10). Defendants assert that "a public employee does not have an absolute right to freedom of speech." Id. at p. 11 (quoting Pickering v. Board of Educ., 391 U.S. 563, 568 (1968) ("[T]he State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general.").

Defendants further argue "Plaintiff claims he 'has a constitutionally protected liberty interest in engaging in the discussion of public issues and advocating for his own election,'" but "[a] public employer may limit the rights of its employees to engage in political activity," and "[t]he mere act of announcing a candidacy for public office does not implicate the First Amendment." Id. at pp. 11–12 (internal citations omitted). Defendants contend "Plaintiff has not alleged sufficient facts to show the City terminated him as a result of political motivation." Id. at p. 12.

Plaintiff responds that the First Amendment "has its fullest and most urgent application precisely to the conduct of campaigns for political office." (Document No. 15, p. 8) (quoting Monitor Patriot Co. v. Roy, 401 U.S. 265, 271–72 (1971)). Plaintiff contends he "has alleged that his termination was not due to parking his police car at an unauthorized location, but rather was

motivated by his engagement in political activity, particularly his decision to run for office," that "his termination occurred as a result of unlawful political motivations," and that "he was disciplined repeatedly and ultimately fired for engaging in political activity, including running for office, which was well within his First Amendment rights." Id.

Defendants do not reply directly on this issue.

This issue presents a close call, but the undersigned is persuaded at this stage that Plaintiff's Complaint states a plausible violation of First Amendment rights. To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

"The First Amendment generally prohibits government officials from dismissing or demoting an employee because of the employee's engagement in constitutionally protected political activity." Heffernan v. City of Paterson, N.J., 578 U.S. 266, 268 (2016) ("When an employer demotes an employee out of a desire to prevent the employee from engaging in protected political activity, the employee is entitled to challenge that unlawful action under the First Amendment and § 1983.") See also Brickey v. Hall, 2014 WL 268449, at *4–5 (W.D. Va. Jan. 23, 2014) ("Here, the court cannot say that the plaintiff will be unable to show that his interest in First Amendment expression outweighed the town's interest in the efficient operation of the police department… Meanwhile, few areas of free speech are more protected than political speech in the electoral process.") (quoting Pierson v. Gondles, 693 F. Supp. 408, 414, E.D. Va. 1988).

The undersigned is persuaded that, for purposes of surviving a motion to dismiss, Plaintiff has sufficiently stated both elements of his § 1983 claim. And, as described below, the undersigned finds that the Complaint raises a reasonable inference of municipal liability under

<u>Monell</u>.  Observing no other arguments in support of dismissal on this point, the undersigned respectfully recommends that Plaintiff's § 1983 claims be permitted to proceed to discovery.

### E.  Retaliation Under N.C. Gen. Stat. § 14-223

Defendants first argue "Plaintiff claims retaliation pursuant to N.C.G.S. § 12-223," but this statute "does not exist."  (Document No. 12, pp. 12–13).  Defendants contend that "[t]o the extent Plaintiff intended to bring a claim under N.C.G.S. § 14-223, that claim also fails."  <u>Id.</u> at p. 12.  Defendants argue N.C. Gen. Stat. § 14-223 "is a criminal statute that does not include a private cause of action for retaliation," and "Plaintiff's claim is dependent upon conduct he contends occurred in 2016 and 2018."  <u>Id.</u>

Plaintiff responds that the Complaint "clearly quotes the correct statute, N.C.G.S. § 14-223, and any inadvertent error in the citation does not deprive the Defendant of notice or the ability to respond."  (Document No. 15, p. 9).  Moreover, Plaintiff asserts, "Defendant[s] acknowledge[] Plaintiff's reference to the relevant statute and quote[] the correct law in their own argument, which demonstrates that Defendant[s] [were] fully aware of the statute being invoked."  <u>Id.</u> at pp. 9–10.

Plaintiff further contends that "[w]hile N.C.G.S. § 14-223 is indeed a criminal statute, Plaintiff has properly alleged that the conduct prohibited by the statute is injurious to the public policy of the state of North Carolina."  <u>Id.</u>  Plaintiff asserts that "[u]nder North Carolina law, the public policy exception allows an at-will employee to bring a common law tort claim for wrongful discharge if the employee is terminated in retaliation for (1) refusing to perform an act prohibited by law, or (2) performing an act required by law."  <u>Id.</u> (citing <u>Hogan v. Forsyth Country Club Co.</u>, 79 N.C. App. 483, 498 (1986)).  Plaintiff again cites the continuing violation doctrine in response to Defendants' arguments regarding the applicable statute of limitations.  <u>Id.</u> at p. 11.

16

Defendants reply that "Plaintiff fails to state facts sufficient to allege a retaliation claim under N.C.G.S. § 14-223, or give credence to his reliance upon a theory of continuing violation." (Document No. 18, p. 6).

Although this issue again presents a close call, the undersigned finds Plaintiff's arguments persuasive. N.C. GEN. STAT. § 14-223 prohibits the delay or obstruction of a public officer "in discharging or attempting to discharge an official duty." Plaintiff alleges that, "[o]n or about 2016, Defendant Brown directed Plaintiff to obstruct the duties of the Narcotics Division of the Catawba County Sheriff's Office in their duties...as a result of political motivations," and that Plaintiff was the victim of false allegations and causeless disciplinary actions after "continu[ing] to perform his duties as required under public policy." (Document No. 1, pp. 8–9). Plaintiff also alleges that his termination in 2022 was "pretextual and a result of political motivation." Id. at p. 13.

The crux of Plaintiff's argument on this point is that he was terminated in retaliation, at least in part, for refusing to obstruct official duties in violation of § 14-223. The undersigned finds that, viewing the Complaint in the light most favorable to Plaintiff, Plaintiff has plausibly alleged an overarching political campaign underlying both the instructions to violate § 14-223 and the subsequent termination. Accordingly, the undersigned will respectfully recommend that Plaintiff's retaliation claim based on § 14-223 be permitted to proceed to discovery.

### F. Claims Under N.C. GEN. STAT. § 160A-169

Defendants contend "N.C.G.S. § 160A-169 does not allow for a private cause of action for retaliation." (Document No. 12, p. 14). Defendants assert that "[u]nder North Carolina law, 'a statute allows for a private cause of action only where the legislature has expressly provided a private [cause] of action within the statute.'" Id. (quoting Hetzel v. JPMorgan Chase Bank, N.A., 2014 WL 7336863, at *7 (E.D.N.C. Dec. 22, 2014)). Defendants argue Plaintiff identifies N.C.

17

GEN. STAT. § 95-126, the Occupational Safety and Health Act of North Carolina ("OSHANC"), as the public policy Defendants violated, but Plaintiff "has not pled facts sufficient to support his claim that he was terminated in violation of…OSHANC." Id. at pp. 15–16.

Plaintiff responds that "North Carolina courts have recognized a valid cause of action for wrongful termination based on violations of public policy, including retaliation in violation of N.C. Gen. Stat. § 160A-169." (Document No. 15, p. 11). Plaintiff asserts that "[i]n *Lambert v. Town of Sylva*, the Court of Appeals allowed a claim to proceed for violations of free speech and association under the North Carolina Constitution, as well as for wrongful termination in violation of public policy pursuant specifically to N.C. Gen. Stat. § 160A-169." Id. at p. 12 (citing 272 N.C. App. 292, 293–94 (2020)). Plaintiff does not respond to Defendants' arguments pertaining to any violation of OSHANC.

Defendants reply that "Plaintiff's characterization of the *Lambert* case is incorrect." (Document No. 18, p. 6). Defendants assert that "[i]n *Lambert*, the plaintiff included a claim for wrongful termination in violation of North Carolina's public policy pursuant to N.C.G.S. § 160A-169," and "[t]he defendant did not move to dismiss the claim which allowed it to continue on to trial." Id. (citing Lambert, 272 N.C. App. at 294). Defendants assert that "[a]t trial, the court granted the defendant's directed verdict which the plaintiff appealed," and "[t]he North Carolina Court of Appeals reversed and remanded based on the trial court's erroneous interpretation of the plaintiff's Section 1983 claims." Id. at pp. 6–7 (citing Lambert, 272 N.C. App. at 294–97). Defendants contend "[t]he *Lambert* court did not address the wrongful termination claim," and "Plaintiff's reliance on the *Lambert* case [is] misplaced." Id. at p. 7.

The undersigned has carefully considered the parties' arguments and the applicable authority on this point and concludes that, at this stage, Plaintiff has stated a plausible claim for

18

relief. The public policy exception to the employment at will doctrine in North Carolina "is 'designed to vindicate the rights of employees fired for reasons offensive to the public policy'" of the state. Woody v. AccuQuest Hearing Ctr., LLC, 284 N.C. App. 540, 545 (2022) (quoting Amos v. Oakdale Knitting Co., 331 N.C. 348, 356 (1992)). "To prevail on a claim for unlawful termination in violation of public policy[,] 'a plaintiff must identify a specified North Carolina public policy that was violated by an employer in discharging the employee.'" Driskell v. Summit Contracting Grp., Inc., 3:16-CV-819-FDW-DSC, 325 F. Supp. 3d 665, 675–76 (W.D.N.C. 2018) (quoting McDonnell v. Guilford Cnty. Tradewind Airlines, Inc., 194 N.C. App. 674, 670 (2009) (declining to grant the defendant judgment as a matter of law on the plaintiff's wrongful discharge claim).

Here, as in Driskell, Plaintiff has referenced a specific North Carolina statute—N.C. GEN. STAT. § 160A-169—in support of his argument that Defendants violated North Carolina public policy. N.C. GEN. STAT. § 160A-169 prohibits city employees from, among other things, using "official authority or influence for the purpose of interfering with or affecting the result of an election or nomination for political office." The undersigned is persuaded that the alleged circumstances of Plaintiff's termination adequately implicate this statute.

**G. Civil Conspiracy**

Defendants next argue "a conspiracy claim alone is insufficient to impose liability on Defendants" and Plaintiff "must also show the Defendants caused the injury pursuant to 'a wrongful act done in furtherance of the conspiracy.'" (Document No. 12, p. 17) (quoting White v. City of Greensboro, 532 F. Supp. 3d 277, 315 (M.D.N.C. 2021). Defendants cite Sloan v. Google LLC, No. 5:23-CV-164-KDB-SCR, 2024 WL 4273590, at *9 (W.D.N.C. Aug. 6, 2024) for the proposition that "[t]he existence of an underlying tortious act is key to establishing a civil

conspiracy." (Document No. 12, p. 17). Defendants argue "Plaintiff's civil conspiracy claim relies on conduct outside the statute of limitations and fails to state facts sufficient to show Brown, Hayes, and Beal had an agreement to unlawfully discipline him." Id. at p. 18.

Plaintiff responds that "the factual allegations in the [C]omplaint, as referenced in Plaintiff's civil conspiracy claim, show that the Defendants acted in concert to unlawfully discipline Plaintiff and falsify information about the circumstances surrounding his discipline and eventual termination." (Document No. 15, p. 14).

Defendants reply that "Plaintiff's civil conspiracy claim is untimely and lacks sufficient facts for the court to infer a meeting of the minds between Defendants Beal, Brown, and Hayes." (Document No. 18, p. 9).

The undersigned agrees with Plaintiff.

> For a civil conspiracy claim, the plaintiff must show: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to [do] a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme."

Sloan, 2024 WL 4273590, at *9 (quoting GB Grp., LLC v. Bulldog Nat'l Risk Retention Grp., Inc., 2023 WL 9514088, at *6 (E.D.N.C. Dec. 27, 2023)).

In short, the factual allegations in the Complaint raise a reasonable inference that the Defendants conspired within the applicable statute of limitations to cause injury to Plaintiff. As described above, Plaintiff has alleged a continuing pattern of misconduct by Defendants resulting in Plaintiff's termination in 2022, and he has asserted common law tort claims in relation to these allegations. The undersigned respectfully recommends that this claim be permitted to proceed to discovery.

## H. Negligent Retention and Supervision

Defendants argue that "[a] common-law tort must underlie a negligent retention and supervision claim." (Document No. 12, p. 19) (quoting Cooper v. Smithfield Packing Co., 2014 WL 794046, at *7 (E.D.N.C. Feb. 27, 2014)). Defendants assert "[t]he Fourth Circuit has held that discrimination, harassment, and retaliation cannot serve as the 'underlying tort' in a negligent retention and supervision claim." Id. (quoting McLean v. Patten Cmtys., Inc., 332 F.3d 714, 719 (4th Cir. 2003)). Defendants contend "Plaintiff's claims include retaliation, violation of § 1983, violation of the [F]irst [A]mendment, and civil conspiracy," and "[n]one of these claims are common law torts as required to satisfy a negligent retention and supervision claim." Id.

Plaintiff responds that Defendants' argument "overlooks the core of Plaintiff's allegations and the legal basis for his wrongful termination claim, which serves as the underlying tort for his negligent retention and supervision claim." (Document No. 15, p. 15). Plaintiff contends the Complaint includes claims "that he was wrongfully retaliated against and terminated in violation of North Carolina's public policy after he exercised his constitutional rights and engaged in political activity by running for office." Id. at p. 16. Plaintiff again asserts that "under North Carolina law, the public policy exception allows an at-will employee to bring a common law tort claim for wrongful discharge if the employee is terminated in retaliation for (1) refusing to perform an act prohibited by law, or (2) performing an act required by law." Id. (citing Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 498 (1986)).

Defendants reply that "[a] wrongful termination claim based on a public policy violation cannot support a negligent retention claim." (Document No. 18, p. 10) (citing Carter v. Sizzling Platter, LLC, No. 3:23-CV-117-GCM, 2023 WL 4604589, at *4–5 (W.D.N.C. July 18, 2023)).

The undersigned finds that Plaintiff has the better argument at this stage. As described above, North Carolina courts have recognized "a common law claim for relief in tort in favor of an employee at will who is discharged from his employment in retaliation for (1) his refusal to perform an act prohibited by law, or (2) his performance of an act required by law." Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 498 (1986). Here, Plaintiff has alleged such a claim.

In Carter, by contrast, the Court dismissed the plaintiff's claim for wrongful discharge in violation of public policy predicated on N.C. GEN. STAT. § 143-422.2(a), for retaliation based on complaints of sexual harassment. 2023 WL 4604589, at *3 ("[I]t is well-settled in North Carolina that claims for wrongful discharge in violation of public policy fail where the claim is predicated on retaliation arising from complaints of sexual harassment."). The Court in Carter cited McLean v. Patten Cmtys., Inc., 332 F.3d 714, 719 (4th Cir. 2003), for the proposition that a plaintiff could not base a negligent retention or supervision claim on an employer's alleged discriminatory or retaliatory conduct "because the North Carolina Equal Employment Practice Act does not create a private cause of action for such a claim." Id. at *5.

The undersigned is persuaded that the instant case is distinguishable from Carter and McClean, and that Plaintiff has plausibly alleged an underlying tort recognized by North Carolina law. Accordingly, the undersigned will respectfully recommend that this claim be permitted to proceed to discovery.

### I. Municipal Monell Liability Under § 1983

Lastly, Defendants argue "[m]unicipal liability cannot be premised on a theory of *respondeat superior*," and "[a]s such, Plaintiff must identify the municipal policy or custom that caused the plaintiff's injury." (Document No. 12, p. 20) (collecting cases). Defendants contend "Plaintiff's Complaint does not identify the specific City policy he contends injured him, nor does

22

he provide facts supporting his contention of a widespread practice or that adequate training had not been done and was necessary." Id. at p. 21.

Plaintiff responds that "a policy or custom may also arise through an omission, such as a failure to properly train officers, or through a practice so 'persistent and widespread' that it constitutes a 'custom or usage with the force of law.'" (Document No. 15, p. 18) (quoting Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003)). Plaintiff contends he "has alleged that the Defendant City of Newton and the Defendant Newton Police Department engaged in a pattern of unconstitutional conduct, including unlawful disciplinary actions, retaliation for Plaintiff's political activity, and the failure to address misconduct by individual officers," and "that the Defendant City failed to properly train or supervise its officers and that this failure manifested in the unlawful treatment he endured." Id. (citing Document No. 1, pp. 24–25). Plaintiff contends "[t]his pattern of misconduct, which Plaintiff alleges was motivated by political factors, is sufficiently widespread and persistent to satisfy the requirement of a 'custom or usage with the force of law' as set forth in *Lytle*." Id.

Plaintiff argues that "[m]oreover, the failure to act to address widespread misconduct by its officers can serve as the basis for [Monell] liability, as such a failure can be considered a municipal policy or custom." Id. Plaintiff asserts that the conduct he alleges, "including unlawful discipline, political retaliation, and wrongful termination, when viewed as part of a broader pattern, could constitute a custom that is so persistent and widespread that it has the force of law," and "[t]he failure of the Defendant City to address these actions—despite the knowledge of such behavior—suggests a systemic problem within the department sufficient to support a [Monell] claim." Id. at p. 19.

Defendants reply that "Plaintiff does nothing more than recite the four (4) theories of Section 1983 municipal liability," and "[t]he Court does not have to assume these conclusions of law to be true." (Document No. 18, pp. 10–11).

The undersigned is persuaded that Plaintiff's Complaint raises a reasonable inference of municipal liability sufficient to survive Defendants' Motion To Dismiss.

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003).

Plaintiff contends he has alleged omissions in the form of failures to properly train officers and failures to address widespread misconduct, as well as patterns of misconduct sufficiently widespread to constitute a "custom." The undersigned agrees and is satisfied that Plaintiff has plausibly alleged a widespread pattern of misconduct that went unaddressed for several years. Accordingly, the undersigned respectfully recommends that Plaintiff's Monell claim against the City of Newton be permitted to proceed at this stage.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendants' Motion To Dismiss Plaintiff's Complaint" (Document No. 11) be **GRANTED IN PART** and **DENIED IN PART** as described herein.

Specifically, the undersigned recommends that the motion be granted with respect to Plaintiff's claims against the Newton Police Department and Plaintiff's claims against Defendants Brown, Sipe, Beal, Hayes, Kelly, and Franklin in their official capacities. The undersigned

24

recommends that the motion be denied with respect to: Plaintiff's claims against the City of Newton for negligent retention and supervision, violation of his First Amendment rights pursuant to 42 U.S.C. § 1983, violation of public policy based on N.C. GEN. STAT. §§ 14-223 and 160A-169, and civil conspiracy; and Plaintiff's claims against Defendants Brown, Sipe, Beal, Hayes, Kelly, and Franklin in their individual capacities for violation of his First Amendment rights pursuant to 42 U.S.C. § 1983, violation of public policy based on N.C. GEN. STAT. §§ 14-223 and 160A-169, and civil conspiracy.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

Signed: August 28, 2025

**IT IS SO RECOMMENDED**.

David C. Keesler
United States Magistrate Judge